UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UTKARSHKUMAR UMAR TRIVEDI
(A-Number: 215-795-308),

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Case No.  1:26-cv-0041-DC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Utkarshkumar Umar Trivedi was admitted to the United States in 2017 as a tourist, and, after being convicted of an aggravated felony, he was arrested and detained by ICE in 2025.  An immigration judge held a custody redetermination hearing and denied petitioner's release.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention violates the Fifth Amendment.  For the reasons outlined below, I recommend that the petition for writ of habeas corpus be denied.

**Background**

On July 31, 2017, petitioner "was admitted into the United States as a nonimmigrant visitor for pleasure," after coming from India.  ECF No. 13-1 at 3.  On July 27, 2018, petitioner filed an asylum application, which remains pending.  *Id*.  On May 16, 2025, petitioner was convicted of criminal attempt to commit child molestation under Georgia Code § 16-4-1, and he was sentenced to probation.  *See id*. at 11-12, 14.

1

On May 28, 2025, petitioner was detained by ICE, served a Notice to Appear, and placed in removal proceedings. *See id*. at 19-21; ECF No. 1 at 5; ECF No. 14 ¶ 7. On January 5, 2026, petitioner received a custody redetermination hearing pursuant to 8 C.F.R. § 1236, at which the immigration judge denied petitioner's request for a change in custody status on the basis that petitioner "poses a danger and flight risk" because of his criminal conviction. ECF No. 13-1 at 26. Petitioner did not appeal this decision. ECF No. 14 ¶ 8. While his removal proceedings are pending, petitioner "has received multiple continuances" and remains detained. *Id*.

**Procedural History**

On January 5, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3. The court granted petitioner's request three days later, ECF No. 5, and appointed counsel appeared on January 14, 2026, ECF No. 6. On March 3, 2026, respondents filed an answer to the petition. ECF No. 13. The petition and answer are deemed submitted because petitioner did not file a traverse by March 10, 2026. ECF No. 11 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention, absent a bond hearing, violates his Fifth Amendment Due Process rights.[1]  ECF No. 1 at 16.  Respondents counter that the petition should be dismissed because petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which allows the Attorney General to detain and then remove any noncitizen who has committed certain qualifying crimes.  ECF No. 13 at 2-3.

Section 1226(c)(1)(B) provides that "[t]he Attorney General shall take into custody any alien who is deportable by reason of having committed any offense covered in" 8 U.S.C. § 1227(a)(2)(A)(iii).  This section, in turn, provides that a noncitizen shall be removed if he or she "is convicted of an aggravated felony at any time after admission."  8 U.S.C. § 1227(a)(2)(A)(iii).  An "aggravated felony" includes an attempt to commit sexual abuse of a minor.  *See* 8 U.S.C. §§ 1101(a)(43)(A), (U).  Here, while petitioner was convicted of criminal attempt under Georgia Code § 16-4-1, the crime he attempted to commit was child molestation in violation of section 16-6-4, which the Court of Appeals for the Eleventh Circuit found constitutes "sexual abuse of a minor."  *See United States v. Gomez-Colin*, 486 F. App'x 53, 55 (11th Cir. 2012); ECF No. 13-1 at 11.  Accordingly, because petitioner attempted to commit sexual abuse of a minor, he committed an aggravated felony and therefore is subject to mandatory detention under section 1226(c)(1)(B).

However, while petitioner's detention is mandated by statute, that does not resolve his claim that his detention violates the Fifth Amendment.[2]  *See* ECF No. 1 at 16.  At present, there is

---

[1] Petitioner received a custody redetermination hearing on the same day he filed his petition for writ of habeas corpus.  There is nothing in the record to suggest that petitioner had knowledge of the hearing when he signed the petition on December 29, 2025.  *See* ECF No. 1 at 18-19.  Respondents do not argue that the provision of a bond hearing moots petitioner's claim. *See* ECF No. 13.  Moreover, petitioner seeks declaratory relief and, in the alternative to a bond hearing, he requests immediate release.  ECF No. 1 at 17.  Accordingly, I analyze the petition on the merits to determine if petitioner is entitled to any requested relief.

[2] Respondents do not contest that petitioner has a protected liberty interest under the Due Process Clause.  In light of this apparent concession and the fact that many courts in this Circuit have found that noncitizens acquire a liberty interest in their continued release, I find it unnecessary to address this issue.  *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025).

no binding authority that squarely addresses petitioner's due process claim.  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention in a different context—under 8 U.S.C. § 1231(a)(6)—and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, the Supreme Court rejected a due process challenge to section 1226(c) and distinguished *Zadvydas* because, unlike indefinite detention pending removal under section 1231(a)(6), mandatory detention under section 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings.  538 U.S. 510, 529 (2003).  The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Id*. at 531.

After *Demore*, the Court of Appeals held that mandatory detention under section 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing.  *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-81 (9th Cir. 2015).  But the Supreme Court reversed, finding that this statutory provision cannot reasonably be read to limit detention to six months.  *Jennings v. Rodriguez*, 583 U.S. 281, 303-306 (2018).  As the Court of Appeals noted on remand, however, the Supreme Court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings."  *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).  "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional."  *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022) (internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under section 1226(c) becomes unconstitutional, courts in this Circuit have used varied tests to determine whether due process requires a bond hearing.  The three main tests are: (1) the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) the test announced in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); and (3) the test announced in *Lopez*, 631 F. Supp. 3d 870.

Petitioner urges the court to use the *Mathews* test.  *See* ECF No. 1 at 10-11.  While respondents do not explicitly advocate for one test, they argue that the *Lopez* test has comparative advantages over the *Mathews* test.  *See* ECF No. 13 at 5.  In *Lopez*, to determine whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause, the court considered three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[3]  *See Lopez*, 631 F. Supp. 3d at 879.

In the absence of binding authority instructing the court which test to employ, I analyze petitioner's claim under the *Lopez* test because that case dealt with the same statutory authority under which petitioner is detained.  Moreover, "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118.  Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879.  Accordingly, petitioner's claim is analyzed under the three factors

---

[3] The *Lopez* test utilizes three factors from the *Banda* test.  *Lopez*, 631 F. Supp. 3d at 877-79.  In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

articulated in *Lopez*: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the delays in proceedings caused by petitioner and the government. I consider each in turn.

## I.      Total Length of Detention

Courts have found that this factor weighs in the petitioner's favor where detention has lasted at least one year. *See, e.g.*, *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1658-DMC, 2026 WL 145644, at *7 (E.D. Cal. Jan. 20, 2026). "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (collecting cases) (cleaned up).

Here, petitioner has been detained for less than a year. Accordingly, this factor weighs in favor of respondents, although only moderately given that petitioner has been detained for eleven months.

## II.      Likely Duration of Future Detention

Second, the court must determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings— including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Though petitioner does not raise the issue, some courts have found that the possibility of an appeal warrants weighing this factor in the petitioner's favor. *See, e.g.*, *Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process."). While there is no evidence in the record to determine the likelihood of such appeal, or how long such process would take, petitioner is entitled to some deference based on the prospect of an appeal increasing the length of the removal proceedings.

Accordingly, I find that the second factor weighs in favor of petitioner, although only slightly given the lack of evidence or argument presented by petitioner.

**III.    Delays in Proceedings Caused by Petitioner and the Government**

Lastly, as for the third factor, petitioner "has received multiple continuances." ECF No. 14 ¶ 8. Respondents also represent that petitioner "has not filed an application with the Immigration Court" and requested continuances "to prepare his case." ECF No. 13 at 2. There are, however, legitimate reasons for a petitioner to delay removal proceedings, such as to secure counsel. *Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *6 (S.D. Cal. Jan. 9, 2023). The present record is insufficient to determine if petitioner's requested continuances are for a legitimate reason, and there is also no evidence that the government has delayed petitioner's removal proceedings. Accordingly, I find that the third factor is neutral.

On balance, while the likely duration of future detention weighs slightly in favor of petitioner, that factor is outweighed by the total length of detention, "which is the most important factor." *See Banda*, 385 F. Supp. 3d at 1118. Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention does not violate his Fifth Amendment Due Process rights.[4]

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be denied.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be DENIED.

2. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed

---

[4] It bears mention that, even if the *Lopez* factors supported the contrary finding, "the appropriate remedy" would be "a bond hearing before an immigration judge rather than immediate release." *See Lopez*, 631 F. Supp. 3d at 882. Because petitioner already has received a bond hearing, and there is no indication that such hearing was procedurally deficient—indeed, petitioner did not exercise his right to appeal the decision—I would find that petitioner is not entitled to a second bond hearing.

within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    April 30, 2026    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE